**McGuireWoods LLP**
Matthew C. Kane, Esq. (SBN 171829)
    Email:  mkane@mcguirewoods.com
Sara E. Willey, Esq. (SBN 249701)
    Email:  swilley@mcguirewoods.com
Sylvia J. Kim, Esq. (SBN 258363)
    Email:  skim@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone: (310) 315-8200
Facsimile: (310) 315-8210

Attorneys for Defendant BSN MEDICAL, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| THOMAS L. KELLEY & ASSOCIATES, INC., a California Corporation; VINCENT ORTEGA, an individual,<br><br>        Plaintiffs,<br><br>    vs.<br><br>BSN MEDICAL INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | CASE NO:   CV08-4419 GW (AGRx)<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT:**<br><br>**(1)  MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**(2)  SUPPLEMENTAL DECLARATIONS OF:**<br>● **BRYAN SHERREL**<br>● **JENNY M. BECK**<br>● **MATTHEW C. KANE**<br>**[Under Separate Covers]**<br><br>**(3)  EVIDENTIARY OBJECTIONS TO AND MOTION TO STRIKE DECLARATIONS OF:**<br>● **THOMAS L. KELLEY**<br>● **VINCENT ORTEGA**<br>● **TIMOTHY PORTER**<br>**[Under Separate Covers]**<br><br>**(4)  RESPONSE TO PLAINTIFFS' SEPARATE STATEMENT OF GENUINE ISSUES**<br>**[Under Separate Cover]**<br><br>**(5)  RESPONSE TO OBJECTIONS TO DECLARATIONS OF GARY KEYTEL, BRYAN SHERRELL AND JENNY BECK**<br>**[Under Separate Cover]** |

**Date:        June 29, 2009**
**Time:        8:30 a.m.**
**Ctrm.:       6**
**Judge:       Hon. George Wu**

9475575.2

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ............................................................................................ 1

II.  ARGUMENT ................................................................................................. 2

    A.   Applicable Legal Standards ................................................................. 2

    B.   The Second Cause Of Action For Breach Of Oral Contract Fails
        As A Matter Of Law Because Plaintiffs Admit No Such Contract
        Exists ................................................................................................... 3

    C.   The First Cause Of Action For Violation Of The Act Fails As A
        Matter Of Law ..................................................................................... 5

        1.   The Act Provides Only Additional Remedies For An
            Otherwise Valid Breach Of Contract Claim, Which
            Plaintiffs Could Only Seek In This Case Based On BSN's
            Alleged Willful Failure To Enter Into Written Contracts
            With Them ................................................................................. 5

        2.   The Claim Is Time-Barred Under The Three-Year Statute
            Of Limitations Because It Accrued No Later Than When
            Plaintiffs' Relationship With BSN Began in 2001, Seven
            Years Before They Brought This Action.................................... 8

        3.   The Claim Fails Because Plaintiffs Admit They Had No
            Contracts Obligating BSN To Pay Them Commissions On
            Sales Made Post-Termination, And Therefore Have No
            Damages That Could Be Trebled Under The Act ..................... 10

        4.   The Claim Fails Because Plaintiffs Have No Evidence
            That BSN "Willfully" Failed To Enter Into Written
            Contracts With Them, If Required To Do So Under The
            Act............................................................................................ 10

        5.   The Claim Fails Because Plaintiffs Were Not "Wholesale
            Sales Representatives" Protected Under The Act ..................... 13

            a.   The Exclusion For Direct Sales Of Products To
                Ultimate Consumers Is Not Limited To "Door-To-
                Door" Sales.................................................................... 13

            b.   The Hospitals And Medical Groups That Purchased
                BSN's Products Were The "End Users" And
                "Ultimate Consumers" Of Those Products, Which
                They Bought For Purposes Other Than Resale............... 15

6.   Plaintiff TKA's Claims Are Barred Because The TKA-Parker Agreement Originated In 1988 And The Act, Which Does Not Apply Retroactively, Became Effective In 1991 .................................................................. 20

D.   The Third Cause Of Action For Breach Of Fiduciary Duty Fails As A Matter Of Law .......................................................................... 21

E.   The Fourth Cause Of Action For Quantum Meruit Fails As A Matter Of Law .................................................................................. 22

1.   Plaintiffs Do Not Dispute That Their Compensation Terms Were Already Covered By Their Oral Parker Agreements ....... 22

2.   Plaintiffs And BSN Entered Into Valid Novation Agreements, Which Are Supported By Adequate Consideration ........................................................................... 23

F.   Plaintiffs Offer No Opposition To Summary Judgment Being Granted On The Fifth Cause Of Action For An Accounting, Which Fails As A Matter Of Law ...................................................... 25

III.   CONCLUSION ................................................................................. 25

8903551.3

ii

DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

### FEDERAL CASES

3

*Bosley Medical Institute, Inc. v. Kremer*,
4      403 F.3d 672 (9th Cir. 2005).................................................................10

5

*Brooks v. Motsenbocker Advanced Developments, Inc.*,
6      2008 WL 2826392 (S.D. Cal. 2008) .....................................................7, 15

7

*Conkle v. Jeong*,
8      73 F.3d 909 (9th Cir. 1995)...................................................................20

9

*Jacobsen v. Filler*,
10      790 F.2d 1362 (9th Cir. 1986)...............................................................23

11

*Kennedy v. Allied Mutual Insurance Co.*,
12      952 F.2d 262 (9th Cir. 1991)..........................................................2, 14, 18

13

*Los Angeles Memorial Coliseum Com'n v. N.F.L.*,
14      726 F.2d 1381 (9th Cir. 1984)...............................................................21

15

*Radobenko v. Automated equipment Corp.*,
16      520 F.2d 540 (9th Cir. 1975)..........................................................2, 18, 24

17

*Schoenduve Corporation v. Lucent Technologies, Inc.*,
18      442 F.3d 727 (9th Cir. 2006)...................................................................7

19

*State Farm Fire and Casualty Co. v. Tan*,
20      691 F. Supp. 1271 (S.D. Cal. 1998) .........................................................4

21

*T.W. Electric Serv., Inc. v. Pacific Electric Contractors Association*,
22      809 F.2d 626 (9th Cir.1987)...................................................................2

23

*Total Control, Inc. v. Danaher Corp.*,
24      2004 WL 1878238 (E.D. Pa. 2004) ..............................................13, 16, 17

25

*Volk v. D.A. Davidson & Co.*,
26      816 F.2d 1406 (9th Cir. 1987)...............................................................20

27

28

iii

*Weiner v. Midwest Film Corp.*,
   1995 WL 549036 (N.D. Ill. 1995)...........................................................7, 9

*Zauderer Associate, Inc. v. C&J Industries*,
   378 F. Supp. 2d 682 (D.S.C. 2005)...............................15, 16, 17

**STATE CASES**

*AMP, Inc. v. Commonwealth of Pennsylvania*,
   852 A.2d 1161 (Pa. 2004) ...............................................16, 17

*Amaral v. Cintas Corp. Number 2*,
   163 Cal. App. 4th 1157 (2008)...................................................12

*Armenta v. Osmose, Inc.*,
   135 Cal. App. 4th 314 (2005).....................................................12

*Caldwell v. Walker*,
   211 Cal. App. 2d 758 (1963) ......................................................11

*Circle Oaks Sales Co. v. Smith*,
   16 Cal. App. 3d 682 (1971) ........................................................11

*Cope v. Davison*,
   30 Cal. 2d 193 (1947)................................................................11

*Ebaugh v. Rabkin*,
   22 Cal. App. 3d 891 (1972)........................................................11

*H.F. Fites Co. v. Harris Manufacturing Co.*,
   89 Cal. App. 427 (1928).............................................................22

*Krobitzsch v. Middleton*,
   72 Cal. App. 2d 804 (1946).........................................................24

*Lee v. Thermal Engineering Corp.*,
   372 S.E.2d 298 (S.C. App. 2002).................................13, 14, 16

*Long v. Rumsey*,
   12 Cal. 2d 334 (1938)................................................................24

8903551.3

iv

DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR,
ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

*Major v. Western Home Insurance Co.*,
169 Cal. App. 4th 1197 (2009)................................................................11

*Metric Man v. Unemp. Insurance Appeals Board*,
59 Cal. App. 4th 1041 (1997)................................................................16

*Nein v. HostPRO, Inc.*, ___ Cal. App. 4th ___,
2009 WL 1533039 (June 3, 2009) ........................................................3

*Paper Products Co. v. City of Pittsburgh*,
130 A.2d 219 (Pa. 1957) ......................................................................19

*Paper Products Co. v. City of Pittsburgh*,
183 Pa. Super. 234 (1957)....................................................................17

*Rickel v. Schwinn Bicycle Co.*,
144 Cal. App. 3d 648 (1983)................................................................22

*Spier v. Lang*,
4 Cal. 2d 711 (1935)..............................................................................21

*Spinks v. Equity Residential Briarwood Apartments*,
171 Cal. App. 4th 1004 (2009)............................................................11

*Thacker v. American Foundry*,
78 Cal. App. 2d 76 (1947)....................................................................22

*Tomaselli v. Transamerica Insurance Co.*,
21 Cal. App. 4th 1269 (1994)..............................................................11

*Walters v. America Insurance Co.*,
185 Cal. App. 2d 776 (1960)................................................................11

*West v. Stainback*,
108 Cal. App. 2d 806 (1952)................................................................24

## STATE STATUTES

Cal. Civ. Code § 1738.10 ..........................................................................14

Cal. Civ. Code § 1738.12(e)......................................................................13

Cal. Civ. Code § 1738.15 .................................................................6, 7, 8, 10

Cal. Civ. Code § 1738.16 ................................................................................ 6

Cal. Code Civ. Proc. § 338(a) ........................................................................ 8

Cal. Code Regs. tit. 8, § 13520......................................................................13

Cal. Lab. Code § 203.................................................................................12, 13

Cal. Lab. Code § 203(a) .................................................................................12

Cal. Rev. & Tax. Code § 6006 ......................................................................20

Cal. Rev. & Tax. Code § 6015 ......................................................................16

8903551.3

vi

DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

# I.  __INTRODUCTION__

Plaintiffs' Opposition to BSN's Motion for Summary Judgment confirms that summary judgment should be granted in favor of BSN on all of Plaintiffs' claims.

First, Plaintiffs admit that their respective TKA-Parker Agreement and Ortega-Parker Agreement (collectively, the "Parker Agreements") did not impose any obligation on BSN to pay Plaintiffs commissions on any sales made to customers after Plaintiffs' relationships with BSN were terminated.  They further admit that they had no agreement with BSN to pay them any such post-termination commissions.  Because all of their purported claims depend on the existence of and/or are untenable in the absence of such an agreement, all of Plaintiffs' claims fail as a matter of law.

Second, Plaintiffs demonstrate that they fundamentally lack any understanding of their purported claim under the California Independent Wholesale Sales Representative Act (the "Act").  Contrary to what Plaintiffs may believe, the Act does not create an independent obligation to pay commissions where, as here, no contractual obligation of any type exists to do so.  Moreover, any purported claim under the Act can only be limited to one for treble damages for BSN's alleged failure to enter into written agreements with them, and nothing else.  However, the uncontroverted facts establish, as a matter of law, that Plaintiffs' claim under the Act is *time-barred*, they have *no damages* that could be trebled under the Act, BSN did not "willfully" fail to enter into written contracts with them, they were not "wholesale sales representatives" protected by the Act, and Plaintiff TKA cannot retroactively apply the provisions of the Act to its pre-existing TKA-Parker Agreement.  Indeed, all of this is established by Plaintiffs' damning deposition testimony admissions, which they knowingly, intentionally and improperly seek to retreat from using contradictory declarations submitted in opposition to this motion.

Third, Plaintiffs admit that they did not have any joint venture or confidential relationship with BSN.  As such, their breach of fiduciary duty claim fails as a matter of law as well.

DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

Fourth, given Plaintiffs' admissions as to the existence and scope of the terms of the Parker Agreements, Plaintiffs' purported quantum meruit claim fails as a matter of law.  The claim further fails because the uncontroverted facts also establish that Plaintiffs entered into their respective Novation Agreements with BSN, which were supported by adequate consideration.

Finally, Plaintiffs offer no opposition to granting summary judgment against them on their purported accounting claim, for which they have no demonstrated need.

Therefore, as we further discuss below, summary judgment should be granted.

## II.    ARGUMENT

### A.    Applicable Legal Standards

Mere allegations, and denials, for example, "that the contract was breached, that a fraud was committed, or that some fiduciary duty was breached do not alone establish the existence of a genuine dispute of material fact."  *Radobenko v. Automated equipment Corp.*, 520 F.2d 540, 543 (9th Cir. 1975).   Instead, they merely "frame the ultimate issues to be determined by applying the relevant rules of law to the established facts."  *Id.*  As a result, any contention by Plaintiffs that the existence of "ultimate issues raises questions of fact which bar summary judgment is without merit."  *Id.*  The proper test is "whether . . . there exists a genuine dispute of material *fact*."  *Id.* (emphasis added).  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Furthermore, any proof of a genuine issue of material fact must be supported by the record.  Statements submitted in declarations made by the party opposing summary judgment that are inconsistent with that party's sworn deposition testimony cannot be used to defeat a motion for summary judgment.  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991).

Applying these standards, Plaintiffs' Opposition fails to establish the existence

1  of any genuine issue of material fact to be decided by the trier of fact.  Therefore,

2  BSN is entitled to summary judgment against Plaintiffs as a matter of law.

3  **B.     The Second Cause Of Action For Breach Of Oral Contract Fails As A Matter Of Law Because Plaintiffs Admit No Such Contract Exists**

5  As we discussed in our opening briefing and we discuss further in Section C,

6  *post*, Plaintiffs' purported First Cause of Action for violation of the Act is entirely

7  *derivative* of and *dependent* upon their ability to establish BSN's liability on their

8  underlying Second Cause of Action for Breach of Oral Contract, which seeks

9  allegedly unpaid commissions on sales made to BSN customers who signed LOC's

10  after the termination of Plaintiffs' relationships with BSN.  Thus, notwithstanding

11  Plaintiffs' efforts to "put the cart before the horse" with their purported First Cause

12  of Action for violation of the Act, we will once again discuss their predicate Second

13  Cause of Action for Breach of Oral Contract first.

14  In that respect, Plaintiffs' Opposition admits that their breach of oral contract

15  claim seeks to have them "be paid a commission on the post-termination sales made

16  to BSN purchasers who signed LOCs, and for the duration of the LOCs."  Oppos.

17  (Doc. #29) at 3:4-7; *see also id.* at 3:13-14 ("the factual question as to whether

18  Plaintiffs should be paid commissions on the LOCs …"), 14:26-15:2 ("Plaintiffs …

19  have never been paid for any sales made pursuant to the LOCs following their

20  termination …").  However, as we showed in our opening briefing, Plaintiffs' had ***no***

21  ***agreement*** with BSN, S&N or Parker to pay them commissions ***after the***

22  ***termination of their relationship***.  *See* Motion (Doc. #28) at 17:18-18:1, 18:18-28

23  (fn. 10).  Not only are the underlying facts supporting this conclusion ***uncontroverted***

24  by Plaintiffs, (*see* Plaintiffs' Statement of Genuine Issues ["GI's"] 21-25, 50-51), but

25  their Opposition brief unequivocally ***admits*** that they had ***no such agreement:***

26  "The Plaintiffs … ***cannot and do not claim that there was a specific agreement between the parties regarding the payment of post-termination commissions***."  Oppos. at 15:7-10 (emphasis added).

28  That further damning admission is the death-knell of not only Plaintiffs'

9475575.2                                           3

DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

breach of oral contract claim, but their entire case.  *See, e.g., Nein v. HostPRO, Inc.*, ___ Cal.App.4th. ___, 2009 WL 1533039, *10 (June 3, 2009) ("[W]e conclude as a matter of law that the … agreement precludes plaintiff from collecting additional commissions post-termination" because it "is reasonably susceptible to only one interpretation – that once plaintiff ceased to be employed by defendant, he would no longer be eligible for commission pay").  Notwithstanding, Plaintiffs incorrectly contend that "[t]his does not logically vitiate [their] breach of contract cause of action" because "[t]he Court has a duty to fill in the gaps to effect the ultimate intentions of the parties on an issue not contemplated by the Parties …"  Oppos. at 15:10-15).  This concocted theory is legally untenable and unsubstantiated, and the Court should reject it *in toto*.

Indeed, Plaintiffs profoundly misconstrue the Court's role in interpreting contracts.  As discussed above and in our opening briefing, they *admit* that their oral agreements with BSN *only* provided for the payment of commissions to them *during their relationships* and *not post-termination*.  Yet, even though they *never* sought and reached an agreement with BSN, S&N or Parker on the payment of commissions post-termination (other than their respective Novation Agreements), Plaintiffs want the Court to "interpret" their respective Parker Agreements as if they contain such a provision for sales made post-termination to customers who signed LOC's.  Thus, they really seek to have the Court **rewrite** their agreements to include an additional term which they never agreed to, and which is not necessary to effectuate the terms for the payment of commissions on sales made *during their relationships* with BSN to which the parties actually agreed.

However, it is *not*, as Plaintiffs suggest, the Court's duty to "fill in the gaps" on terms on which the parties *never intended* to reach agreement.  They rely only on *State Farm Fire and Casualty Co. v. Tan*, 691 F.Supp. 1271 (S.D. Cal. 1998), which actually held that the Court's "duty to fill in the gaps of the contract" must be guided by the parties' "overall intentions."  *Id.* at 1273 (noting that the purpose is to

"*effectuate* the overall intentions of the contracting parties") (emphasis added).  The mere fact that one party to a contract contends that a "gap" exists in its terms does not give the Court license to "fill" it with *new and additional terms* which the parties *never agreed to* absent a clear and manifest *bilateral intent* by the parties to have provided such terms in their agreement.  *Id.* (noting that courts must be careful to not "venture beyond construing the contract to effectuate the manifest intention of the parties").  Indeed, while Plaintiffs may have "20-20 hindsight" on the issue of being paid commissions post-termination, the fact remains that they chose to not address it at the time of entering into their Parker Agreements, and the Court has no duty to cure their new-found "buyer's remorse" because its focus must be on the parties' intent *at the time they entered into their agreements.  Id.* ("The court must determine what the parties bargained for when they agreed to the terms of the [agreement]").

It is uncontroverted that the terms of Plaintiffs' respective Parker Agreements *only* provided for the payment of commissions on sales made *during the term of their relationships* with BSN, and *not on post-termination sales*.  This reflects the parties' intent to not agree to any obligation to make post-termination commission payments.  That intent cannot be "interpreted" out of those agreements by *rewriting* them to include *new and additional terms* on which the parties *never intended to agree*.  Therefore, Plaintiffs' Second Cause of Action for Breach of Oral Contract fails as a matter of law and summary judgment should be granted in favor of BSN.

## C.   The First Cause Of Action For Violation Of The Act Fails As A Matter Of Law

### 1.   The Act Provides Only Additional Remedies For An Otherwise Valid Breach Of Contract Claim, Which Plaintiffs Could Only Seek In This Case Based On BSN's Alleged Willful Failure To Enter Into Written Contracts With Them

Plaintiffs' Opposition demonstrates their fundamental lack of understanding of the provisions of the Act and what they can seek under the circumstances *sub judice*.  Indeed, Plaintiffs apparently believe, notwithstanding their admission that they had no agreement with BSN to pay them any commissions on sales made post-

termination, that the Act somehow creates an independent statutory obligation for BSN to pay them such commissions.  The Act creates no such obligation.

As we discussed in our opening briefing, the Act only provides one substantive remedy:  "*treble damages proved at trial*" against a manufacturer that "*willfully fails to enter into a written contract* as required by" the Act or that "*willfully fails to pay commissions as provided in the written contract*".  Cal. Civ. Code § 1738.15 (emphasis added).  Plaintiffs do not dispute that the only damages that could be "proved at trial" and trebled under the Act in this case are for unpaid *commissions*.  Oppos. at 4:21-5:13.  Thus, a predicate to an award of treble damages pursuant to the Act is the breach of an agreement to pay commissions and resulting damages in the form of unpaid commissions, making any purported "cause of action" for violation of the Act wholly dependent on and derivative of a successful breach of contract claim.  Therefore, Plaintiffs' assertion that their purported "cause of action for a violation of [the Act] rests on its own merits in this case" is plainly wrong.  Oppos. at 5:12-13.  At most, the Act provides only *additional remedies* for a successful breach of contract claim.[1]

Plaintiffs' confusion about the Act is well-exemplified by their assertion that "BSN violated the statute in multiple ways – … *both* by *failing to have a contract setting forth when and how commissions would be paid*, as well as *failing to pay those commissions*."  Oppos. at 5:13-15 (emphasis added).  Yet, because Plaintiffs admit that they *did not have a written contract* with BSN, (GI's 40, 56), any remedies they seek under the Act can *only* be based on BSN's alleged "*willfully fail[ing] to enter into a written contract* as required by" the Act.  Cal. Civ. Code § 1738.15 (emphasis added).  They would *not* be entitled to any remedy under the Act merely

---

[1]  Thus, the only reasonable interpretation of the Act's references to a "civil action" in Cal. Civ. Code §§ 1738.15 and 1738.16 is that it means a civil action for a breach of contract (oral or written).

for BSN's "failing to pay those commissions" because the Act's remedies on this basis are limited to if BSN "willfully fail[ed] to pay commissions *as provided in the written contract*" required under the Act, which Plaintiffs admit they did not have.[2] *Id.* (emphasis added); GI Nos. 40, 56.

This principle is well illustrated in *Weiner v. Midwest Film Corp.*, 1995 WL 549036 (N.D. Ill. 1995).   In that case, Weiner sued Midwest Film Corporation ("MFC"), seeking compensatory and treble damages under the Act.  *Id.* at *1.  Like the Plaintiffs here, Weiner argued that he had a cause of action under the Act based on MFC's failure to pay him commissions that were allegedly due under an *oral contract*.  *Id.* at *4.  In rejecting Weiner's contention, the District Court held:

> [T]he California Act does not mention breach of an *oral* contract – *only failure to enter into a written contract or breach of a written contract can form the basis for liability under the Act*.   Since there was **no written contract** between MFC and Weiner, the **only** cognizable claim under the California Act is for MFC's **failure to enter into a written contract**.  *Id.*  (emphasis added).

Therefore, any liability Plaintiffs may seek to impose on BSN under the Act can *only* be based on its alleged "willfully fail[ing] to enter into a written contract as required by" the Act and *not* failing to pay commissions pursuant to any oral or implied contract.  Cal. Civ. Code § 1738.15.  As we further discuss below, no such liability can be imposed on BSN under the Act as a matter of law.[3]

---

[2] As we further discuss *post*, Plaintiffs' purported claim under the Act fails as a matter of law because it is time barred, Plaintiffs have no evidence that BSN willfully violated the Act, there is no valid predicate breach of contract claim for damages that could be trebled under the Act, Plaintiffs were not "wholesale sales representatives" protected by the Act, and the Act cannot be applied retroactively to the TKA-Parker Agreement.

[3] Plaintiffs' cited cases of *Schoenduve Corporation v. Lucent Technologies, Inc.*, 442 F.3d 727 (9th Cir. 2006), and *Brooks v. Motsenbocker Advanced Developments, Inc.*, 2008 WL 2826392 (S.D. Cal. 2008), do not contradict BSN's arguments and are inapposite for at least two reasons: (1) they neither raise nor decide the issue of whether the Act creates a separate cause of action for its violation or just additional remedies for a predicate breach of contract; and (2) their holdings and reasoning are *consistent* with the premise that the Act effectively provides only additional *remedies* to a valid breach of contract or implied contract claim.  Indeed, *Schoenduve* involved the District Court's review of an arbitrator's award making only an award of attorneys' fees under

9475575.2

7

DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

**2.     The Claim Is Time-Barred Under The Three-Year Statute Of Limitations Because It Accrued No Later Than When Plaintiffs' Relationship With BSN Began in 2001, Seven Years Before They Brought This Action**

Assuming, *arguendo*, that a separate cause of action exists under the Act, Plaintiffs' claim is nonetheless ***time-barred***.  Plaintiffs agree that such a claim would be subject to the three-year statute of limitations under Cal. Code Civ. Proc. § 338(a).

Recognizing the merit of BSN's argument that Plaintiffs' claim accrued no later than in April 2001, when their relationships with BSN started upon its assumption of their respective Parker Agreements, Plaintiffs incorrectly attempt to assert that their claim is nevertheless timely under a "continuing violation" theory.  Oppos. at 10:22-11:4.  In support of this, they argue that they "have not sued for any commissions owed prior to their termination" in June 2006, and "that *statutory violations occurred within three years prior to filing suit* – BSN *failed to have a written contract* with Plaintiffs *during that three year period*, and *failed to pay commissions* to Plaintiffs *during that period*."  *Id.* at 11:5-13 (emphasis added).  These arguments further demonstrate Plaintiffs' lack of understanding of the Act.

As we discussed in our opening briefing and further above, *only* BSN's alleged *willful failure to enter into a written contract* as required under the Act can form the basis for any liability under the Act.  Cal. Civ. Code § 1738.15.  Therefore, any alleged *failure to pay commissions* during the three-year period prior to the filing of this action *cannot* be the basis for any liability under the Act or provide any basis for application of the "continuing violation" theory.  As Plaintiffs admit, their relationships with BSN commenced in ***April 2001***, upon its assumption of their respective Parker Agreements from S&N.  GI's 21-32, 50-56.  *At that time*, any

---

the Act, and therefore involved different circumstances, including a highly deferential review of the arbitrator's award, which do not exist in this case.  In *Brooks*, the District Court granted summary judgment in favor of the defendant because the plaintiffs were not "wholesale sales representatives" under the Act.

DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

alleged obligation of BSN under the Act to enter into written contracts with Plaintiffs, and any claim for its willful failure to do so, would have arisen and *accrued*.  Under Plaintiffs completely unsubstantiated "continuing violation" theory, they effectively claim that a new obligation to enter into a written contract arose each time a customer serviced by them placed an order with BSN.  Not surprisingly, no court has ever interpreted the Act's requirements in this tenuous manner.

In fact, the District Court in *Weiner, supra*, 1995 WL 549036, ruled on this very issue, *rejecting* the argument that liability for failure to enter into a written contract required under the Act did not accrue until there was a failure to pay commissions.  In that case, Weiner sued MFC over four years after entering into his relationship with MFC, for its alleged failures to pay him commissions and to enter into a written contract with him.  MFC moved for summary judgment on the ground that Weiner's claim under the Act was ***time-barred***, which the District Court *granted*:

> Since there was no written contract between MFC and Weiner, the only cognizable claim under the California Act is for MFC's ***failure to enter into a written contract***. The facts alleged in Weiner's own pleadings reveal that ***this violation occurred no later than June 1990, when Weiner and MFC entered into their oral agreement***.

*Id.* at *4 (emphasis added).  Indeed, the *Weiner* court further noted that:

> Weiner complains that finding that his California Act claim accrued when the oral contract was entered into "is absurd ... [because] a party could breach an oral contract after the limitations period expired and escape liability to a performing party." … Weiner is incorrect, however, because count III is not a claim for breach of an oral contract. Rather, it is a claim under a statute requiring manufacturers to enter into written contracts with their sales agents. The absurd result Weiner complains of simply does not arise because a performing party has a common law cause of action for breach of contract. *Id.*, fn. 2.

Thus, Plaintiffs' purported claim under the Act for failure to enter into a written contract accrued no later than in ***April 2001***, *when BSN assumed their respective Parker Agreements*.  This violation could have occurred only once, *at that time*, and Plaintiffs *waited over seven years* to commence this action.  As such, their claim is ***time-barred*** and summary judgment should be granted in favor of BSN.

9475575.2

9

DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR,
ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

**3.     The Claim Fails Because Plaintiffs Admit They Had No Contracts Obligating BSN To Pay Them Commissions On Sales Made Post-Termination, And Therefore Have No Damages That Could Be Trebled Under The Act**

Even assuming, *arguendo*, that Plaintiffs' purported claim under the Act is not time-barred, it still fails as a matter of law.  As we discussed in our opening briefing and further above, the Act does not create an independent statutory obligation to pay commissions.  Rather, it is wholly derivative of and provides additional remedies for an otherwise valid breach of contract claim for unpaid commissions, in the form of "treble the damages proved at trial."  Cal. Civ. Code § 1738.15.

As we discussed in Section B, above, and as Plaintiffs admit in their Opposition brief, Plaintiffs had ***no agreement*** with BSN to pay them commissions on any sales made post-termination, other than as agreed in their Novation Agreements.  Therefore, Plaintiffs have ***no damages*** which could be ***trebled*** under the Act as a matter of law and summary judgment should be granted in favor of BSN.

**4.     The Claim Fails Because Plaintiffs Have No Evidence That BSN "Willfully" Failed To Enter Into Written Contracts With Them, If Required To Do So Under The Act**

To be entitled to ***treble damages*** under the Act, Plaintiffs must be able to prove that BSN ***willfully*** failed to enter into written contracts with them, if it was required to do so under the Act (which it was not).  Cal. Civ. Code § 1738.15.  Recognizing that they have no such evidence, Plaintiffs ask the Court to interpret "willfully" as used in the Act to mean merely "the failure to act" as required under the Act.  Oppos. at 13:17-19.  However, such an interpretation would render the Act's use of the word "willfully" to be *meaningless surplusage*, effectively creating a strict liability standard for *any* failure to comply with the Act, which could have been accomplished without using the word "willfully" in the first instance.  *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005) ("We try to avoid, where possible, an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used …") (internal quotation marks and

10

citation omitted). Thus, the "willfully" standard was undeniably intended to impose a higher threshold for imposing treble damages liability. *See, e.g., Walters v. Am. Ins. Co.*, 185 Cal.App.2d 776, 783 (1960) ("willful" as used in insurance statute "connotes something more blameworthy than … ordinary negligence, and *something more than the mere intentional doing of an act* constituting such negligence") (emphasis added); *Cope v. Davison*, 30 Cal.2d 193, 201 (1947) ("willful" as used in vehicle statute implied an intent that "*relates to the misconduct and not merely to the fact that some act was intentionally done*") (emphasis added).

Indeed, such a higher threshold likely was intended because treble damages are *intended to punish* and are therefore more akin to **punitive damages**. *See, e.g.*, *Circle Oaks Sales Co. v. Smith*, 16 Cal.App.3d 682, 684 (1971) (noting that treble damages are "punitive and exemplary in nature"); *Caldwell v. Walker*, 211 Cal.App.2d 758, 762 (1963) (describing treble damages provision in timber statute as a "penalty"). It is well-settled that such damages "are proper only when the … conduct rises to levels of *extreme indifference to the plaintiff's rights*, a level which decent citizens should not have to tolerate." *Tomaselli v. Transamerica Insurance Co.,* 21 Cal.App.4th 1269, 1287 (1994) (emphasis added). *See also Ebaugh v. Rabkin*, 22 Cal.App.3d 891, 894 (1972) ("willful" as used in punitive damages statute meant the "act complained of must not only be *willful in the sense of intentional,* but it must also be *accompanied by aggravating circumstances, amounting to malice*") (emphasis added); *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal.App.4th 1004, 1055 (2009) (exemplary damages require "that the wrong was *committed willfully or with a design to injure*"); *Major v. Western Home Ins. Co.*, 169 Cal.App.4th 1197, 1223 (2009) (conduct supporting punitive damages must be "done with *willful and conscious disregard* of the rights or safety of others or *despicable conduct done in conscious disregard* of a person's rights") (emphasis added).

Here, the uncontroverted evidence shows only that Plaintiffs did not have written contracts with BSN, that Plaintiffs and BSN never requested of each other

9475575.2

11

DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR,
ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

that they enter into such contracts, and that BSN never indicated that it was unwilling to enter into such contracts.  GI's 40-42, 56-58.  Such evidence does not and cannot establish BSN's "willful" failure to enter into written contracts with Plaintiffs under the foregoing standards.

Realizing this, Plaintiffs argue instead that "[t]he best statutory analogy" to what "willfully" means under the Act is what it means in its use in Cal. Lab. Code § 203 ("Section 203"), which they incorrectly assert means the "failure to act upon law itself."[4]  Oppos. at 13:10-19.  They argue that this incorrect standard should apply because of manufacturers' "proactive" conduct required *each month* under the Act, including providing written information with each commission payment.  However, it is uncontroverted that BSN complied with those requirements by providing detailed monthly commission payment reports to Plaintiffs.  GI's 83-86.  Indeed, even applying the actual meaning of "willfully" under Section 203, Plaintiffs' claim still fails because "[t]he settled meaning of 'willful,' as used in section 203, is that an employer has ***intentionally failed or refused to perform an act*** which was required to be done."  *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1201 (2008) (emphasis added).  Here, Plaintiffs have no evidence (circumstantial or otherwise) that BSN "*intentionally* failed or refused" to enter into written contracts with them.

Moreover, even if the Section 203 "willfully" standard applies under the Act (which it does not), it is well-settled that "[a] good faith belief in a legal defense will preclude a finding of willfulness."  *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 325 (2005) (citation omitted).  "A 'good faith dispute' … occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery …  The fact that a defense is ultimately unsuccessful will not preclude a

---

[4] Section 203 addresses "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits …" Cal. Lab. Code § 203(a).

DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

finding that a good faith dispute did exist. …" Cal. Code Regs., tit. 8, § 13520.  Here, as discussed in our opening briefing and further below, it is uncontroverted that BSN had a *good faith dispute regarding whether Plaintiffs were "wholesale sales representatives" under the Act*.  Indeed, although they have raised the Section 203 "willfully" standard as applying under the Act, Plaintiffs have not offered a scintilla of evidence that BSN's dispute with them on this issue was not in good faith.

Therefore, Plaintiffs cannot establish the essential element of BSN "willfully" failing to enter into written contracts with them as a matter of law, and summary judgment should be granted in favor of BSN.

### 5. The Claim Fails Because Plaintiffs Were Not "Wholesale Sales Representatives" Protected Under The Act

#### a. *The Exclusion For Direct Sales Of Products To Ultimate Consumers Is Not Limited To "Door-To-Door" Sales*

As we discussed in our opening briefing, Plaintiffs were not "wholesale sales representatives" protected under the Act because their sales at issue were "direct sale[s] of [BSN's] products to the *ultimate consumer*."[5]  Cal. Civ. Code § 1738.12(e) (emphasis added).  Without even mentioning (never mind discussing) any of BSN's cited cases, Plaintiffs argue that this is "ridiculous."  Indeed, they offer no admissible evidence or legal authority in support of their position – just their own *ipse dixits* and improper *conclusory* statements to the effect that they *were* "wholesale sales representatives" and that it was BSN's customers' *patients* who were the "ultimate consumers" of its products.  *See Total Control, Inc. v. Danaher Corp.*, 2004 WL 1878238, *4 (E.D. Pa. 2004) (summary judgment granted for defendants where plaintiffs offered only "conclusory" statements that they solicited wholesale orders).

---

[5] By this exclusion from the definition of a "wholesale sales representative," the Act deals exclusively with sales representatives that move goods in the "wholesale" marketplace, and not via retail transactions like those at issue here.  *See, e.g.*, *Lee v. Thermal Engineering Corp.*, 372 S.E.2d 298, 305 (S.C. App. 2002) ("[I]t is clear that in its use of the word "wholesale" the legislature intended to address a problem in the wholesale distribution system" and did "not intend to create additional remedies for all salespersons who are paid by commission").

DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

Incredibly, Plaintiffs even argue that their damning deposition testimony admissions on these issues should be disregarded because they "are contradicted by the declarations" they submitted in opposition to this motion.  Oppos. at 10:1-9.  Not so.  *See Kennedy, supra,* 952 F.2d at 266-67 (declarations contradicting deposition testimony cannot be used to raise a triable issue of fact).

To this end, Plaintiffs argue only that "logically," the ultimate consumer sales exclusion "is intended to apply to 'door-to-door' and other similar-type sales people."  Oppos. at 6:23-25.  Beyond this "logic" argument, Plaintiffs offer no authority supporting such a narrow construction of this exclusion from the Act's definition of a "wholesale sales representative," other than that the Act's stated purpose is to provide "unique protection from unjust termination of the territorial market areas."[6]  Cal. Civ. Code § 1738.10.  However, while no California court has yet interpreted the meaning of "ultimate consumer" for purposes of this exclusion, courts in other jurisdictions have had no trouble finding that sales representatives who worked in exclusive territorial markets nevertheless were not protected under that jurisdiction's independent sales representative protection statute.

For example, the South Carolina Court of Appeal interpreted "ultimate consumer" as used in its statute, which was in all material respects identical to California's Act, as excluding from the definition of "wholesale sales representatives" those who solicited orders for control panels from manufacturers, who in turn used the control panels as components in their manufacturing equipment.  *See Lee v. Thermal Engineering Corp.*, 372 S.E.2d 298, 305 (S.C. App. 2002).  Indeed, the sales representative in *Lee* was *not* a "door-to-door" salesperson and his market covered Thermal Engineering's Southeastern United States territory.  *Id.* at 299.

---

[6] Remarkably, notwithstanding this stated purpose of the Act, its provisions provide absolutely no protection against the termination (unjust or otherwise) of a wholesale sales representative's "territorial market areas."

14
DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

In *Zauderer Assoc., Inc. v. C&J Industries*, 378 F.Supp.2d 682 (D.S.C. 2005), the District Court held that a sales representative who sold molded plastic products to manufacturers, who then incorporated those parts into other products, was not a "wholesale sales representative" under South Carolina's statute because they were in fact taking orders for the direct sale of the molded plastic products to the ultimate consumer or end user. *Id.* at 689 (the "pertinent question" was whether plaintiffs "solicited orders from individuals or corporations who were the *ultimate consumer* or *end user* of C&J's products"). Again, the *Zauderer* sales representative was *not* a "door-to-door" salesperson and he was C&J's exclusive sales agent in a large territory which included Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, Tennessee, and Virginia. *Id.* at 683.

Similarly, in *Brooks, supra*, 2008 WL 2826392, which Plaintiffs cite in their Opposition, the District Court had no problem finding that Brooks, despite all his time spent developing his sales territory in addition to developing the product being sold, was *not* a "wholesales sales representative" under the Act, even though he was not a "door-to-door" salesperson. Plaintiffs are thus similarly situated to the sales representatives in these cases, who were found to not be protected by the Act or statute at issue based on their making direct sales to the ultimate consumer, even though they were not "door-to-door" salespersons.

        **b.**    ***The Hospitals And Medical Groups That Purchased BSN's Products Were The "End Users" And "Ultimate Consumers" Of Those Products, Which They Bought For Purposes Other Than Resale***

Realizing that they have significant problems on the "ultimate consumer" issue because BSN charges sales tax on taxable products sold to its customers which do not have tax-exempt status, Plaintiffs attempt to avoid it altogether by asserting that "the taxation issue resolves nothing" and "whether tax was charged to or by any given healthcare provider … is a non-sequitur:  the fact of tax being charged to an entity does not make the entity the 'ultimate consumer' under [the Act]." Oppos. at

8:18-22.  Yet, Plaintiffs' contention in this regard is belied by their reliance on three BSN invoices attached as Exhibit A to their opposing declaration of Thomas L. Kelley, on which no sales tax was charged to the customer for the products invoiced.[7]

Indeed, Plaintiffs ignore BSN's cited cases holding that ultimate consumers are, as that term is interpreted by case law, the "end users" or "retail customers" of those products.  *See, e.g., Total Control, Inc.*, 2004 WL 1878238, *3 ("ultimate consumer" means "*retail customer*" for purposes of Pennsylvania sales representative act); *Zauderer*, 378 F.Supp.2d at 689 (equating "end user" with "ultimate consumer"); *Metric Man v. Unemp. Ins. Appeals Bd.*, 59 Cal.App.4th 1041, 1050 (1997) (a retailer sells to ultimate consumers, which buy products for purposes other than resale to a third party).  "Ultimate consumers" also include those who purchase products which they then incorporate into other products, rather than reselling the original products.  *Zauderer*, 378 F.Supp.2d at 689; *Lee*, 372 S.E.2d at 305.  Thus, retail customers normally pay sales tax on items they buy because they are purchased for purposes other than resale.  *See* Cal. Rev. & Tax. Code § 6015 (a "retail sale" is "a sale for *any purpose other than resale in the regular course of business*") (emphasis added); Cal. Board of Equalization Response to Inquiry, *available at* http://www.calpaca.org/docs/CASalesandUseTax.pdf   (all retail sales of goods are charged sales tax unless exempted by law).

Plaintiffs rely only on BSN's own cited case of *AMP, Inc. v. Commonwealth of Pennsylvania*, 852 A.2d 1161, 1166 n. 4 (Pa. 2004), which provides no support for their unsubstantiated conclusion that "it is clear that the patient is the 'ultimate consumer' – not the hospital/healthcare provider."  Oppos. at 9:1-9.  Based on the

---

[7] As discussed in BSN's accompanying Supplemental Declaration of Bryan Sherrel, the customer in question does not have tax-exempt status with BSN, but the products invoiced are not subject to sales tax under California law.  Moreover, as discussed in the accompanying Supplemental Declaration of Jenny M. Beck, the invoiced customer is not even at issue in this action because it never signed a LOC.

DEFENDANT BSN MEDICAL, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT

*AMP* court's use of the dictionary definitions of the words "ultimate" and "consumer," Plaintiffs simply argue that "consumer" means one who "buys goods or services for personal, family or household use, with no intention of resale" and that "ultimate" refers to a point "by which a process or series comes to an end."  *Id.* However, under these definitions, BSN's hospital and medical group customers that purchase its products are in fact the "ultimate consumers" of those products because they buy them for personal use by their patients when the process of providing them medical treatment services comes to an end.  *See* Defendant's Responses to Plaintiffs' Statement of Genuine Issues filed herewith ("RGI's") 9, 13-16.  In other words, the medical professional "uses" the product to provide the medical treatment services to the patient, and it simply remains on the patient until the treatment is completed.

Moreover, Plaintiffs conveniently ignore that, immediately after referencing these definitions, the *AMP* court cited *Paper Products Co. v. City of Pittsburgh*, 183 Pa.Super. 234, 246 (1957), for the proposition that "the *person buying from a retailer is the ultimate user or consumer* of the article or commodity *and does not sell it again*." (Emphasis added).  Thus, the *AMP* court simply engaged in a plain meaning analysis of the term "ultimate consumer" in concluding that it refers to retail customers *or* those that *do not purchase exclusively for resale*, which is consistent with the foregoing analysis and application of the dictionary definitions, and instructive for interpreting the meaning of the same term under the Act.  *See Total Control, Inc., supra,* 2004 WL 1878238, *3 (although *AMP* interpreted "ultimate consumer" as used in tax code, same interpretation applied to sales representative act because based on its plain meaning and common usage).

Of course, this is also wholly consistent with Plaintiffs' admissions in their deposition testimony that the hospitals and medical groups that purchased BSN's products were the "end users" of those products, as we discussed in our opening briefing, which leads to only one legal conclusion:  that those customers were, in fact, the "ultimate consumers" of those products under the Act.  *Zauderer*, 378

F.Supp.2d at 689 (equating "end user" with "ultimate consumer").  Realizing the death-knell that their deposition testimony is to their purported claim, Plaintiffs argue that their "end user" admissions are "meaningless statements" and improperly offer what they admit are *contradictory declarations* which make nothing more than *conclusory* statements that it was the customers' *patients* who "ultimately consumed" BSN's products purchased by its customers.  Oppos. at 10:1-9.

Indeed, what is truly "meaningless" are Plaintiffs' self-serving, sham declarations which *intentionally contradict* their sworn deposition testimony in an improper attempt to raise a triable issue of fact where none exists.  *Radobenko, supra,* 520 F.2d at 543-44.  As the Ninth Circuit has articulated:

> [I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. *Kennedy, supra*, 952 F.2d at 266-67.  *See also Radobenko*, *supra.*

Here, Plaintiffs do not deny (because they cannot) that they unequivocally testified in their depositions that the hospitals and medical groups they sold BSN products to were the "end users" of those products.  Instead, now that they realize the import of their admissions, Plaintiffs claim they "did not mean they were 'ultimate consumers'" and that BSN has taken their deposition testimony "out of context."  GI's 174-175.  Tellingly, however, Plaintiffs have not offered a single additional excerpt of their deposition testimony to show a different context in which it should be taken.  Therefore, Plaintiffs' attempted disclaimer of their prior testimony should be *rejected*.

Plaintiffs' sham declarations also should be disregarded because they offer only *unsubstantiated legal contentions* and *denials* rather than *factual evidence*, which cannot be used to create triable issues of material fact.  *See, e.g.*, *Radobenko*, 520 F.2d at 543 ("Mere allegations, and denials … do not alone establish the existence of a genuine dispute of material fact [because] [s]uch allegations and denials thereof merely frame the ultimate issues to be determined by applying the relevant rules of law to established facts.").  Here, "end user" is a factual description

of BSN's customers, which establishes the legal conclusion that they are the "ultimate consumers" of its products.  This description is well-supported by Plaintiffs' related deposition testimony that they not only sold BSN's products to its hospital and medical group customers that purchased them, but they also trained those customers on how to *use* those products in providing medical treatment services to their patients.  RGI 8.

Similarly, Plaintiffs' sham declarations make an unavailing attempt to explain away their damning deposition testimony that BSN's customers at issue were *not retailers*, by claiming that what they "intended" to say was that the customers did not resell the products to *other hospitals and doctors*.  Notwithstanding that Plaintiffs did not take the required steps to correct their sworn deposition testimony if it was not truthful, they have *failed* to provide any *facts* which would raise a triable issue of fact to controvert BSN's position that its hospital and medical group customers were were *BSN's retail customers* which *did not purchase its products for the purpose of resale*. For example, they offer a copy of an internal form from Pomona Valley Hospital Medical Center with the phrase "Ortho Charges" printed in the bottom-right-section, (Ortega Decl., Ex. A), but this document is meaningless for several reasons.  First, as set forth in BSN's accompanying evidentiary objections and motion to strike, and its Supplemental Kane Declaration, Plaintiffs never produced this document during discovery.   Second, as set forth in BSN's Supplemental Beck Declaration, this customer did not even sign an LOC at issue in this case.  Third, it does nothing to disprove the material fact that this customer did *not* purchase BSN's products *only for purposes of resale*.[8]  *See Paper Products Co. v. City of Pittsburgh*, 130 A.2d 219, 224 (Pa. 1957) (retail customers are the "ultimate user[s]" of a product as opposed to

_____

[8]  Plaintiffs also offer three BSN invoices issued to Lawrence Ortho Appliance, (Kelley Decl., Exh. A), which are meaningless and objectionable for these same reasons.  *See* BSN's accompanying evidentiary objections and motion to strike; Suppl. Sherrel Decl.; Suppl. Beck Decl.; Suppl. Kane Decl.; fn. 7, *supra*.

those buying "*only* for the purpose of selling the [product] again") (emphasis added).

Finally, Plaintiffs purport to rely on Cal. Rev. & Tax. Code § 6006, which defines "sale," but it is unclear why they do so.  BSN does not contend that its customers' patients and/or their insurance companies do not pay for the BSN products its customers use in providing medical treatment services to their patients.  What BSN does contend, however, and Plaintiffs do not controvert, is that its customers *do not purchase BSN products for the sole purpose of resale* (or for any resale purpose).  Indeed, Plaintiffs testified in their depositions that BSN's products were purchased by its customers *for the purpose of providing medical treatment services*, and that any charges to patients for the cost of those products was only to *holistically compensate* the customers for the *entire gamut of medical treatment services* provided.  RGI 7.

Accordingly, no genuine triable issue of material fact exists as to BSN's customers at issue in this action being the "ultimate consumers" of its products sold by Plaintiffs.  Therefore, summary judgment should be granted in favor of BSN.[9]

**6.    Plaintiff TKA's Claims Are Barred Because The TKA-Parker Agreement Originated In 1988 And The Act, Which Does Not Apply Retroactively, Became Effective In 1991**

As discussed in our opening briefing and further above, TKA's purported claim under the Act could *only* be based on BSN's alleged willful failure to enter into a written contract with TKA.  It is uncontroverted that the TKA-Parker Agreement is the only operative agreement governing TKA's relationship with BSN, and that TKA entered into that Agreement in 1988.  GI's 21-32.  Yet, TKA is indeed suing BSN for

---

[9] Plaintiffs purport to request an "opportunity to conduct additional discovery and present further evidence on this issue" but fail to provide *any* evidence to meet their high burden for being allowed to do so.  Oppos. at 10:26, fn. 3.  Rule 56 was not intended to serve as the road to a fishing expedition.  "The party seeking to conduct additional discovery [must] put forth sufficient facts to show that the evidence sought exists." *Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir. 1995) (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987)).  Here, although Plaintiffs' purported request cites to a "Humphrey Dec.," no such declaration was submitted and Plaintiffs wholly fail to identify the evidence that they seek *and any evidence that it even exists*.

conduct that occurred prior to 1991, when the Act became effective, by asserting that the TKA-Parker Agreement *should have been in writing* to comply with the Act. Thus, TKA is attempting to hold BSN liable for conduct (entering into the *oral* TKA-Parker Agreement) that was lawful at the time it occurred in 1988.

TKA fails to address any of BSN's cited authorities as to why the Act does not and cannot be applied retroactively to the TKA-Parker Agreement, as TKA is attempting to do. TKA's only "argument" in opposition is that BSN has never been provided an "exemption" from complying with the Act after it became effective. Of course, BSN has never claimed to have an "exemption" from the Act's provisions but, instead, has shown that those provisions cannot be applied retroactively to its pre-existing TKA-Parker Agreement. TKA has not controverted any of BSN's facts or law supporting this conclusion. Therefore, summary judgment should be granted against TKA on this basis as well.

### D.   The Third Cause Of Action For Breach Of Fiduciary Duty Fails As A Matter Of Law

Plaintiffs' entire opposition to summary judgment being granted on their breach of fiduciary duty claim rests on paragraph 10 of Ortega's declaration, where he claims he was "told by Mr. Keytel on several occasions that BSN and I 'are in this together' and 'will jointly benefit' from getting the LOCs in place." Ortega Decl., ¶ 10; Opp. at 15:23-26. As a preliminary matter, this self-serving declaration should be rejected because it contradicts Plaintiffs' deposition testimony. Moreover, it provides absolutely no support for TKA's breach of fiduciary duty claim because, even if the statements recited therein were made, it *still* fails to establish the essential elements of a *joint venture*, which is the basis for the claim. It is uncontroverted that Plaintiffs (1) did not have any agreement with BSN for the sharing of losses and (2) had no power or authority to direct or manage the operations of BSN. GI's 44-45, 60-61; *Los Angeles Memorial Coliseum Com'n v. N.F.L.,* 726 F.2d 1381, 1390 (9th Cir. 1984) (sharing of "profits and losses" is required for joint ventures); *Spier v.*

*Lang*, 4 Cal.2d 711, 716-17 (1935) (essential element of joint venture is right of joint participation in management and control of business).  It is also uncontroverted that Plaintiffs did *not* have a *confidential* relationship with BSN.  GI's 46, 62;  *Rickel v. Schwinn Bicycle Co.*, 144 Cal.App.3d 648, 654 (1983) ("A 'fiduciary relation' in law is ordinarily synonymous with a 'confidential relation' … founded upon the trust or confidence reposed by one person in the integrity and fidelity of another …").

Therefore, Plaintiffs' breach of fiduciary duty claim fails as a matter of law and summary judgment should be granted in favor of BSN.

**E.**   **The Fourth Cause Of Action For Quantum Meruit Fails As A Matter Of Law**

**1.**   **Plaintiffs Do Not Dispute That Their Compensation Terms Were Already Covered By Their Oral Parker Agreements**

As discussed in our opening briefing and further above, and as Plaintiffs admit in their Opposition, Plaintiffs' respective Parker Agreements governed the terms of their compensation with BSN, and they had no agreement for the payment of commissions on sales made to customers post-termination.  Thus, as a matter of law, Plaintiffs cannot assert a valid quantum meruit claim for commissions on sales made post-termination.  *See, e.g.*, *H.F. Fites Co. v. Harris Mfg. Co.*, 89 Cal.App. 427, 435 (1928) (reversing trial court decision and noting that "there is a marked inconsistency in the findings of the court in this, that the plaintiff could not recover on a contract … and also on a quantum meruit").  As the court in *Thacker v. American Foundry*, 78 Cal.App.2d 76, 86 (1947), described it:

> If there is a valid express contract his recovery must rest upon and be measured by its terms. The compensation agreed upon in the express contract … [binds] both parties … and neither may, after the establishment of such a contract, recover different or a larger sum just because such a sum would have been recoverable had the parties not theretofore agreed upon express terms.

As such, it is Plaintiffs who are "misguided" in arguing that "this [quantum meruit] claim may clearly be presented as an alternative to the breach of contract claim up until" a "verdict" in this case.  Oppos. at 15:19-22.  Indeed, their argument

flies in the face of the purpose of summary judgment.  *See Jacobsen v. Filler*, 790 F.2d 1362, 1365 n. 4 (9th Cir. 1986) ("[T]he purpose of summary judgment is to head off a full-scale trial by conducting a trial in miniature").  Therefore, having admitted to the validity and scope of their respective Parker Agreements, Plaintiffs' quantum meruit claim fails as a matter of law and summary judgment should be granted in favor of BSN.

### 2. Plaintiffs And BSN Entered Into Valid Novation Agreements, Which Are Supported By Adequate Consideration

All of the elements required for a valid novation agreement are present here. As Plaintiffs concede in their Opposition, "summary judgment may be granted in appropriate [novation] cases … Courts may take into consideration the conduct of the parties, particularly where, as here, the subsequent agreement is oral. … If the intent to abandon [the original agreement] can be ascertained from the acts and conduct of the parties the same result will be attained.  Abandonment may be implied from surrounding facts and circumstances."  Oppos. at 17:2-15 (internal quotations and citations omitted).  This case is a textbook example of such "abandonment" in that Plaintiffs' intent to abandon their respective Parker Agreements is evidenced by their acceptance of post-termination commissions from June 2006 that they did not earn, but were nevertheless paid by BSN in consideration for termination of any remaining obligations under their original Parker Agreements (the "Novation Agreements").  They then waited almost two full years to bring this action, without first making any protest or complaint to BSN.  GI's 171-172.  This silence and delay, particularly after accepting post-termination commissions that they admit they were never entitled to under their Parker Agreements, unequivocally establishes Plaintiffs' intent to substitute the Novation Agreements for any remaining obligations they claim existed under the Parker Agreements.  RGI's 25, 51, 169-172.

Plaintiffs' argument that they "had no opportunity to provide any consideration" is belied by their admissions that their Parker Agreements did not

provide for paying them commissions on post-termination sales, and their acceptance of commissions through the *end* of June 2006 on both direct and indirect sales of BSN products despite the fact that they were released in *mid*-June 2006.  BSN's payment of commissions to them on sales made between when they were released and the end of June 2006, notwithstanding not being obligated to do so, was adequate consideration for the Novation Agreements.  Indeed, Plaintiffs offer no facts which controvert that fact that they "accepted the commission payments under the Novation Agreement as payment in full of any and all commission payment obligations to it." GI's 169-170.  Instead, they just make the conclusory statements that the Novation Agreements "lacked … mutual assent and consideration," which are legal conclusions rather than facts that do not raise triable issues of fact.  *Id.; Radobenko,* 520 F.2d at 543.  Notwithstanding, sufficient consideration exists, as there is not a high threshold for its sufficiency.  It may be forbearance to sue on a claim, an extension of time, or any other giving up of a legal right, in consideration of some promise, and even the slightest forbearance will suffice.  *See, e.g.*, *West v. Stainback*, 108 Cal.App.2d 806, 814 (1952) (dismissing a will contest in consideration of promise to leave property by will); *Krobitzsch v. Middleton*, 72 Cal.App.2d 804, 809 (1946) ("Even though forbearance is for one day only, there is sufficient consideration as the law does not weigh the quantum.").

Here, Plaintiffs' quantum meruit claim arose, if at all, when BSN released them from its sales force.  *Long v. Rumsey*, 12 Cal.2d 334, 347 (1938).  Plaintiffs engaged in discussions with Keytel, immediately following his notifying them of their release, about an agreement on paying them commissions on sales made post-termination.  In the course of these discussions, Plaintiffs and BSN reached an agreement that Plaintiffs would be paid commissions on post-termination sales made through the end of June 2006.  Thus, although BSN was under no obligation to pay Plaintiffs commissions on any post-termination sales, it entered into the Novation Agreements with them and *gave up its right* in that regard for post-termination sales through the

24

end of June 2006.  Likewise, since Plaintiffs claim that they were entitled to such commissions, they entered into the Novation Agreements and *gave up their rights* to any commissions on sales made after June 2006, and they accepted BSN's additional commission payments as BSN's fulfillment of any financial obligations it may have had to them.

Therefore, valid novation agreements were entered into between Plaintiffs and BSN, their quantum meruit claim fails as a matter of law, and summary judgment should be granted in favor of BSN.

### F.    Plaintiffs Offer No Opposition To Summary Judgment Being Granted On The Fifth Cause Of Action For An Accounting, Which Fails As A Matter Of Law

Plaintiffs offer no opposition to the Court granting summary judgment in favor of BSN on their purported claim for an accounting.  Regardless, as discussed in our opening briefing, this claim is entirely derivative of Plaintiffs other claims, which fail as a matter of law, and it is uncontroverted that Plaintiffs cannot demonstrate any need for an accounting.  Therefore, summary judgment should be granted in favor of BSN on this claim.

## III.   CONCLUSION

For all of the foregoing reasons, and those set forth in the accompanying supporting documents, the Court should grant BSN's motion for summary judgment.

DATED: June 22, 2009          McGuireWoods LLP


                               By:  ____/s/ Matthew C. Kane_____
                                    Matthew C. Kane
                                    Sara E. Willey
                                    Sylvia J. Kim

                                    Attorneys for Defendant
                                    BSN MEDICAL, INC.