# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 08-4419-GW(AGRx) | Date | July 9, 2009 |
| Title | J. Thomas L. Kelley & Associates, Inc., et al. v. BSN Medical, Inc., et al. | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:            Attorneys Present for Defendants:

J. Scott Humphrey                                      Matthew C. Kane

**PROCEEDINGS:** **DEFENDANT BSN MEDICAL, INC.'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT (filed 06/08/09)**

Hearing is held. The tentative attached is hereby adopted as the Court's final ruling.

For reasons stated on the record and as further discussed in this hearing, Defendant BSN Medical, Inc.'s Motion for Summary Judgment or, alternatively, Partial Summary Judgment, is **granted** not for summary judgment but for summary adjudication as to Counts One and Three. Count Two is granted in part. The Court **denies** Count Five (Accounting). Count Five is a derivative claim depending upon the validity of a cause of action under claims two and four.

IT IS SO ORDERED.

:        40

Initials of Preparer    JG

**Thomas L. Kelley & Associates, Inc., et al. v. BSN Medical Inc.**, Case No. CV-08-4419
Tentative Ruling on Motion for Summary Judgment or, Alternatively, Partial Summary Judgment

## I. Background

Plaintiffs Thomas L. Kelley Associates, Inc. ("TKA") and Vincent Ortega (collectively "Plaintiffs") sued defendant BSN Medical Inc. ("BSN"), alleging that they were wholesale medical products sales representatives for BSN in, respectively, northern and southern California. *See* Complaint ¶¶ 1-2. In brief, Plaintiffs allege that BSN used their services to obtain Letters of Commitment ("LOCs") from the customers Plaintiffs had frequented and, after they successfully did so, BSN suddenly terminated their services. *See id.* ¶¶ 9-10. Plaintiffs allege that BSN owes them commissions on "the millions of dollars earned by BSN . . . off of the customers who executed" the LOCs. *See id.* ¶ 10. The controverted and uncontroverted facts, as germane to the individual claims addressed in this motion (and each of the arguments pertaining thereto) are discussed as necessary below.

Plaintiffs' Complaint sets forth five causes of action: 1) violation of California Civil Code § 1738.10 et seq.; 2) breach of contract; 3) breach of fiduciary duty; 4) *quantum meruit*; and 5) an accounting. BSN now moves for summary judgment or, in the alternative, summary adjudication as to each of the five claims for relief. This Court has diversity jurisdiction over this matter.

## II. Analysis

### Summary Judgment Standards

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir. 2005). A moving party without the burden of persuasion may carry its burden of production on summary judgment by negating an essential element of the opposing party's claim or defense or by "showing" the opposing party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). With

1

respect to a moving party with the burden of persuasion – as in a defendant's summary judgment motion with respect to an affirmative defense – "to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (omitting internal quotation marks); *see also Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 204 (9th Cir. 1950), *cert. denied*, 340 U.S. 943 (1951).

> [If] the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing, among other cases, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and views all evidence and draws all inferences in the light most favorable to the non-moving party. *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Motley v. Parks*, 432 F.3d 1072, 1075 n.1 (9th Cir. 2005) (*en banc*); *Miranda*, 429 F.3d at 860 n.1. The evidence presented by the parties must be admissible. *See* Fed.R.Civ.P. 56(e)(1). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

<u>Civil Code Sections 1738.10 et seq.</u>

The Independent Wholesale Sales Representatives Contractual Relations Act of 1990, Cal. Civ. Code § 1738.10, *et seq.*, where it applies, requires written contracts between manufacturers/distributors and non-employee "wholesale sales representative[s]" where the relationship involves payment by commissions. *See* Cal. Civ. Code § 1738.13(a). The term "Wholesale sales representative" means

> [a]ny person who contracts with a manufacturer, jobber, or distributor for the purpose of soliciting wholesale orders, is compensated, in whole or part, by commission, but shall not include one who places orders or purchases exclusively for his own account for resale and shall not include

> one who sells or takes orders for the direct sale of products to the ultimate consumer.

*Id.* § 1738.12(e). The written contracts are required to contain certain information and each party to the contract is to be provided with a signed copy of the written contract, with the sales representative signing a receipt acknowledging receipt of the signed contract. *See id.* § 1738.13(b), (c). The willful failure of the manufacturer/distributor to enter into this contract or the willful failure to pay commissions as provided in the written contract leads to liability "for treble the damages proved at trial." *Id.* § 1738.15.

BSN makes at least five principal arguments with respect to Plaintiffs' claim pursuant to California Civil Code § 1738.10, *et seq.*: first, that the statute provides remedies only for breach of a contract with a wholesale sales representative and that Plaintiffs did not serve in such roles[1]; second, that there was no evidence that BSN willfully failed to enter into such a contract; third, that the only damages payable under the statute were for treble the amount of the unpaid commissions, and there were no unpaid commissions here; fourth, that the claim is barred by the applicable statute of limitations[2]; and fifth, as to TKA, the statute may not be applied retroactively[3].

The Court need not reach the parties' arguments concerning application of the statute of limitations and any retroactive application of section 1738.10, *et seq.* Nor does it need to reach the question of whether Plaintiffs were in fact "wholesale sales representatives" (although were it to do so, it is clear from the parties' papers that a triable issue of fact exists with respect to this question[4]). The Court will grant BSN's

---

[1] BSN argues that the term "wholesale sales representative[s]" does not include direct sales to ultimate consumers. In other words, BSN argues that the physicians, hospitals and medical groups were the ultimate consumers of its products, not the patients those physicians, hospitals and medical groups treated with BSN's products.

[2] Briefly, because the issue is not addressed substantively below, Plaintiffs agree that the applicable statute of limitations is three years, but believe that the cause of action only accrued once BSN failed to pay the post-termination commissions. They also argue that the violation of section 1738.10 was a continuing violation.

[3] Briefly, because the issue is not addressed substantively below, Plaintiffs insist that they are suing for violations which occurred after section 1738.10 was enacted.

[4] If it need not reach this argument, it equally need not resolve Plaintiffs' request for further discovery on this issue under Fed. R. Civ. P. 56(f). In addition, the Court need not resolve BSN's arguments that Plaintiffs have presented sham declarations in an attempt to create a triable issue on this point. In brief,

motion as to this claim because (1) Plaintiffs have no damages within the meaning of the statute, and (2) even if they did have such damages, Plaintiffs have failed to demonstrate a triable issue of fact with respect to whether BSN willfully failed to enter into a written contract.

Plaintiffs' only claim for unpaid commissions in this case relates to commissions they assert they are owed for sales made <u>after their termination</u>. In other words, they do not appear to claim that they were not properly paid their commissions earned prior to their termination. *See* Plaintiffs' Statement of Genuine Issues in Support of Opposition to Defendant's Motion for Summary Judgment or, in the Alternative, Summary Adjudication ("PSGI") ¶¶ 39, 80-81, 171-72. As noted below in connection with the breach of contract claim, Plaintiffs admit both that they never had any written contract and that they had no <u>contractual</u> term whatsoever giving them the right to post-termination commissions. *See* ¶¶ 21, 24-36, 50-55. They therefore could never recover for any willful failure to pay commissions as provided in any written contract. Moreover, any failure to enter into a written contract could not have <u>caused</u> any damages they have incurred in connection with any post-termination commissions they believe they were owed. Otherwise, any time a manufacturer or distributor violates the statute by failing to enter into a written contract, the harmed wholesale sales representative would be free to make up any terms they want and argue that those terms would have been memorialized in any written agreement had the parties actually seen fit to enter into a written agreement.

Again, the Court is not presented with a situation where Plaintiffs have come forward with evidence of an oral contract reflecting those terms that simply did not make their way into a memorialized agreement. They instead have admitted that there were no such oral discussions. While BSN couches this argument in terms of an absence of a cause of action under the statute, it is perhaps more appropriately handled as a lack of any cognizable damages. *But see cf. Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727,

---

BSN takes Plaintiffs' witnesses to task for attempting to change their testimony or their approach to the terms "retailer," "further resale" or "end-user." However, the witnesses could not offer testimony as to legal conclusions in the first instance. Any attempt to change their approach to those conclusions would be equally flawed and there is therefore no need to examine the "sham" nature of their present declarations, inadmissible as they are on that subject.

736 & nn.8-9 (9th Cir. 2006) (suggesting that a manufacturer/distributor can violate section 1738.13(a) without violating section 1738.15[5]).

   Plaintiffs argue that willfulness is a triable issue, pointing to the fact that the legislation obligates the retention of a written copy of the contract and a signed receipt of the delivery of the contract. Notwithstanding such obligations, however, there is no evidence that BSN was aware of the statute's requirements, knew or believed that it applied to their operations, and still refused to comply. *Cf. Bardis v. Oates*, 119 Cal.App.4th 1, 24 (2004) (equating section 1738.15's willfulness requirement with "fraudulent and bad faith conduct"). It is not incumbent upon BSN, as the moving party, to explain why they did not offer such contracts. Plaintiffs bear the burden on this issue and have not presented any evidence of willfulness (or even knowledge) – for instance, any opinion letters, discussions of the statute and its application in the trade press, etc. Instead, Plaintiffs only offer evidence that BSN never indicated it was willing to enter into a written contract and Plaintiffs themselves did not know about the terms of the statute and did not themselves see a need for a written agreement. *See* PSGI ¶¶ 41-42, 57-58; Defendant BSN Medical, Inc.'s Objections and Responses to Plaintiffs' Statement of Genuine Issues Filed in Opposition to Motion for Summary Judgment or, Alternatively, Partial Summary Judgment ("DOR") ¶¶ 41-42, 57-58. This is insufficient to create a triable issue of fact.

   For at least these two reasons, the Court will grant BSN's motion as it relates to this claim.

   Breach of Contract

   The Court must grant BSN's motion as it relates to Plaintiffs' breach of contract claim. Though the parties agree that Plaintiffs were operating as sales representatives pursuant to oral contracts, *see* PSGI ¶¶ 21, 26, 28-33, 50, 52-53, 55-56, BSN argues that there never was a contract for the payment of post-termination commissions. Thus, there could not have been a breach, nor was there even the necessary element of consent

---

[5] The conclusion ignores the fact that there is no remedy provided in the statute for a simple violation of section 1738.13(a) (other than attorney's fees and costs, *see* Cal. Civ. Code § 1738.16). Even if the Court were to read into the statute an injunctive remedy, here the relationship between Plaintiffs and BSN has already ended. There would be no basis for injunctive relief (*i.e.*, requiring a written contract) in that setting.

5

amongst the parties as to the alleged term in question. *See Spinks v. Equity Residential Briarwood Apartments*, 171 Cal.App.4th 1004, 1031 (2009) ("A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom.") (quoting *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1489 (2006)); *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199, 208 (2006) ("Contract formation requires mutual consent, which cannot exist unless the parties agree upon the same thing in the same sense. If there is no evidence establishing a manifestation of assent to the same thing by both parties, then there is no mutual consent to contract and no contract formation.") (omitting internal citations and quotation marks); *Roth v. Malson*, 67 Cal.App.4th 552, 557 (1998) ("Consent of the parties is essential to the existence of a contract. Consent must be free, mutual and [c]ommunicated by each to the other.") (omitting internal citation and quotation marks).

In turn, Plaintiffs effectively admit that they never had a contractual term giving them any right to post-termination commissions. *See* PSGI ¶¶ 25, 36, 51; DOR ¶¶ 25, 41-42, 57-58; Kelley Decl. ¶ 12; Ortega Decl. ¶ 13. Instead, they simply assert that they should be paid for their hard work in obtaining the LOCs. That may or may not be true. Such relief would not be achieved by way of a breach of contract claim, however.[6]

As such, the Court will grant BSN's motion as it relates to Plaintiffs' second claim for relief.

---

[6] Plaintiffs have not argued – or at least not explicitly argued – that their contract was implied. In any event, Plaintiffs have not presented any facts which would make it a triable issue as to whether BSN's conduct implied that Plaintiffs would be paid post-termination commissions. *See Yari v. Producers Guild of Am., Inc.*, 161 Cal.App.4th 172, 182 (2008) ("A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct.") (emphasis added). Because Plaintiffs did not argue for an implied contract – as such – the parties have not discussed to what extent this principle also bleeds over into Plaintiffs' *quantum meruit* claim (assuming such claim otherwise survives this motion). *See Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore*, 162 Cal.App.4th 1331, 1344 (2008); 1 Witkin, Summary of California Law: Contracts (10th ed.), § 1037, at 1128 ("To entitle the plaintiff to recover [in *quantum meruit*], the circumstances must be such as to warrant the inference that it was the expectation of *both parties* during the time that the services were rendered that compensation should be made.") (emphasis in original); *see also In re De Laurentiis Entm't Group Inc.*, 963 F.2d 1269, 1272-73 (9th Cir.), *cert. denied sub nom. Carolco Tel. Inc. v. National Broad. Co., Inc.*, 506 U.S. 918 (1992) (indicating that *quantum meruit* and implied contract are distinct under California law); *Balzer/Wolf Assocs., Inc. v. Parlex Corp.*, 753 F.2d 771, 773 (9th Cir. 1985).

Breach of Fiduciary Duty

BSN argues that Plaintiffs may not make out a fiduciary breach claim because the only basis they have identified for such a claim is a purported joint venture relationship. BSN contends that Plaintiffs may not make a case for a joint venture relationship, principally because they have not demonstrated any sharing of profits or losses or any shared power or authority to direct or manage operations. At the very least, Plaintiffs do not dispute that there was no agreement for the sharing of losses between Plaintiffs and BSN and that Plaintiffs had no power or authority to direct or manage BSN's operations. *See* PSGI ¶¶ 44-45, 60-61. Plaintiffs only assert that a joint venture existed "because both BSN and TKA[7] expended enormous effort [to] get the LOCs in place, to keep sales as high as possible, thereby expressly benefiting both parties." *See* PSGI ¶¶ 47, 59; DOR ¶¶ 47, 59. This is insufficient to form a joint venture. *See April Enters., Inc. v. KTTV*, 147 Cal.App.3d 805, 819 (1983) ("The elements of a joint venture are: (1) [a] joint interest in a common business; (2) with an understanding to share profits and losses; and (3) a right to joint control."); *see also Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1214 (9th Cir. 1994) ("A joint venture exists when there is an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control.") (omitting internal quotation marks); 9 Witkin, Summary of California Law: Partnership (10th ed.) §§ 9, 11, at 583, 586-87. Plaintiffs therefore have failed to present a triable issue of fact in support of their fiduciary breach claim. The Court will grant BSN's motion as it relates to this claim.

*Quantum Meruit*

The Plaintiffs had been engaged in procuring LOCs on BSN's behalf for approximately two years before they were terminated. *See* PSGI ¶¶ 157-58. Although they acknowledge the absence of any contractual term giving them a right to post-termination commissions, they contend that they are entitled to such under a theory of *quantum meruit*. *See* 1 Witkin, Summary of California Law: Contracts (10th ed.) §

---

[7] Plaintiffs do not make a similar contention as to Ortega, although they presumably mistakenly failed to do so. *See* PSGI ¶ 59. Even if a mistake, however, other reasons require that the Court grant BSN's motion as to this claim, for the reasons addressed above.

1036, at 1127 (indicating that *quantum meruit* recovery of "reasonable value" is available "[w]here one person renders services to another from which the latter derives benefit"); *see also In re De Laurentiis Entm't Group Inc.*, 963 F.2d 1269, 1272 (9th Cir.), *cert. denied sub nom. Carolco Tel. Inc. v. National Broad. Co., Inc.*, 506 U.S. 918 (1992).

      BSN argues that if a valid oral contract exists, Plaintiffs' *quantum meruit* claim cannot survive. As noted, however, Plaintiffs' breach of contract claim cannot survive summary adjudication. As BSN successfully argued, there is no contractual term providing Plaintiffs' any rights to post-termination commissions. All parties agree that the contracts' coverage extended only to the issue of compensation during the term of the sales relationships. The rule precluding *quantum meruit* recovery as set forth in *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal.App.4th 1410 (1996), therefore, does not control the outcome. *See id.* at 1419 ("Contractual terms regarding <u>a subject</u> are not implicitly missing when the parties have agreed on express terms regarding <u>that subject</u>.") (emphasis added). Therefore, BSN cannot dispose of Plaintiffs' *quantum meruit* claim on this basis.

      BSN further argues that, even assuming Plaintiffs' claim is not barred by the parties' contractual agreements, Plaintiffs entered into novation agreements with BSN, replacing any rights they might otherwise have had to post-termination commissions.[8] With respect to this argument, novation serves as an affirmative defense, meaning BSN bears the burden of proof.

      Plaintiffs dispute whether a novation was truly intended. *See* PSGI ¶¶ 165-70; *see also* 1 Witkin, Summary of California Law: Contracts (10th ed.), § 961, at 1052 ("Novation is the *substitution* <u>by agreement</u> of a new obligation for an existing one, <u>with intent to *extinguish the latter*</u>.") (italics in original, underline added); *id.* § 963, at 1054 ("A novation requires an intent to substitute a new obligation, terminating the old one."); *Malmstrom v. Kaiser Aluminum & Chem. Corp.*, 187 Cal.App.3d 299, 317 (1986). Although they acknowledge that they never objected to the terms set forth in their

---

[8] BSN does not actually cite any case law demonstrating that the concept of a novation is applicable in the context of a *quantum meruit* claim. However, in light of the fact that intent is a necessary element for any demonstration of novation (and thus the acknowledgment of a pre-existing obligation, or at least the possibility of one), it is not inconceivable that the concept is so applicable.

termination letters, they assert (without citation) that their failure to speak does not equate to their assent.

There does not appear to have been any separable written novation agreement. Instead, the agreement appears to have come about by way of an e-mail exchange. *See* Keytel Decl. ¶ 24, Exh. C. There is nothing in that e-mail exchange, nor anything in any of the deposition testimony BSN cites in support of its motion, *see* BSN's [Proposed] Statement of Uncontroverted Facts and Conclusions of Law in Support of Defendant BSN Medical, Inc's Motion for Summary Judgment or, Alternatively, Partial Summary Jugdment [*sic*] ¶¶ 165-70, which demonstrates that a reasonable jury could not disbelieve that a novation was intended – in other words, that Plaintiffs intended to extinguish any pre-existing obligation. *See Vallely Investments, L.P. v. BancAmerica Commercial Corp.*, 88 Cal.App.4th 816, 832 (2001) ("A novation requires an express release by the party entitled to enforce a promise."); *Malmstrom*, 187 Cal.App.3d at 317-18 ("Here the record is devoid of evidence that the parties intended to extinguish the 1977 written contract."); *see also Fanucchi & Limi Farms v. United Agri Prods.*, 414 F.3d 1075, 1081-82 (9th Cir. 2005) (indicating that determining parties' intent as to novation is "highly fact-specific" and "not generally suitable for disposition on summary judgment"). For that reason alone, BSN's novation-related argument fails to preclude Plaintiffs' *quantum meruit* claim.[9] *Cf. Brown v. Coffee*, 17 Cal.App. 381, 384 (1911) ("The burden of establishing a novation is upon the party who asserts its existence.") (internal quotation marks omitted). The Court will deny BSN's motion as to the *quantum meruit* claim.

Accounting

BSN argues that Plaintiffs' accounting claim is derivative. Because all of the

---

[9] Plaintiffs also appear to argue that the termination letter could not serve as a novation agreement because there was inadequate consideration. Although in its Reply BSN appears to understand Plaintiffs as taking the position that <u>BSN</u> provided inadequate consideration, Plaintiffs seem instead to argue that <u>they</u> provided no consideration because they were not giving up any contractual right to the post-termination commissions. *See* Plaintiffs' Opposition at 17:25-18:1 ("Defendants have failed to provide any evidence of consideration provided by Plaintiffs."). This is consistent with BSN's argument that Plaintiffs have no valid breach of contract claim. At the very least, however, an argument could be made (if BSN's novation argument were to be credited) that Plaintiffs gave up their right to a *quantum meruit* recovery – seemingly perfectly legitimate consideration for purposes of formalizing the novation agreement. In any event, because BSN cannot prevail on the intent element of its novation-related defense, the Court need not resolve this issue at this stage.

other claims are fatally flawed, it argues, the accounting claim must fail as well. Plaintiffs do not independently address this issue. Given the Court's proposed dispositions, Plaintiffs' accounting claim would survive, at least in connection with their *quantum meruit* claim.[10]

Other Factors

The Court recognizes that Plaintiffs have not raised a cause of action based upon a breach of the implied covenant of good faith and fair dealing. Additionally, neither side has provided any evidence or argument as to the existence or non-existence of any industry practice regarding the payment of post termination commissions. The Court would like to know whether those un-proffered matters will remain dormant in this lawsuit.

### III. Plaintiffs' Evidentiary Objections

*Keytel Decl.*

¶ 4 – sustain as to first three sentences (foundation); otherwise, overrule;

¶ 5 – sustain as to third and fourth sentences (foundation); otherwise, overrule;

¶ 6 – overrule;

¶ 7 – sustain (relevance);

¶ 8 – overrule;

¶ 10[11] -- overrule;

¶ 11 – overrule;

¶ 12 – overrule;

¶ 13 – overrule;

¶ 14 – overrule;

¶ 15 – overrule;

¶ 16 – overrule;

¶ 17 – overrule;

---

[10] Although Plaintiffs admit that they received sufficient documentation of their commissions prior to their termination, there is no assertion that they received sufficient documentation for the commissions they did not receive after their termination.

[11] Plaintiffs twice object to paragraph 6 of the Keytel Declaration. Presumably the second objection is intended to target paragraph 10 in that it references Exhibit A (which is introduced in paragraph 10).

¶ 18 – overrule;

¶ 19 – overrule;

¶ 20 – overrule;

¶ 21 – overrule;

¶ 22 – overrule;

¶ 23 – overrule;

¶ 24[12] – sustain as to quoted sentence; otherwise overrule;

¶ 25 – overrule;

¶ 26 – overrule;

¶ 27[13] – overrule;

¶ 28 – sustain;

¶ 29 – sustain (foundation).

*Sherrell Decl.*

¶ 4 – overrule.

*Beck Decl.*

¶ 5 – overrule;

¶ 6 – overrule;

¶ 7 – overrule;

¶ 8 – overrule;

¶ 9 – overrule;

¶ 10 – overrule;

¶ 11 – overrule;

¶ 12 – overrule;

¶ 14 – overrule.

**BSN's Evidentiary Objections**

*Kelley Decl.*

1. Sustain to the extent declarant opines on wholesale status (improper opinion/legal conclusion); otherwise, overrule;

---

[12] Plaintiffs twice object to paragraph 13 of the Keytel Declaration. Presumably the second objection is intended to target paragraph 24 in that it quotes directly from paragraph 24.

[13] Plaintiffs twice object to Exhibit E. Presumably the second objection is intended to target Exhibit F.

2. Same as #1, above;

3. Overrule;

4. Sustain as to following language: "which in turn sold these products to their patients" (foundation); otherwise overrule;

5. Same as #1, above;

6. Sustain as to taking orders for the direct sale of products to an ultimate consumer (foundation); otherwise overrule;

7. Overrule;

8. Sustain as to joint venture status; otherwise overrule;

9. Overrule;

10. Overrule;

11. Overrule;

12. Sustain as to retail/wholesale distinction (foundation/legal conclusion/improper opinion); otherwise overrule;

13. Same as #1, above, and also sustain as to what Keytel told other sales representatives (foundation);

14. Overrule;

15. Sustain (relevance);

16. Sustain as to customers' perception (foundation); otherwise overrule;

17. Sustain (relevance);

18. Overrule;

19. Overrule;

20. Overrule;

21. Sustain (hearsay);

22. Sustain (foundation);

23. Overrule;

24. Overrule;

25. Overrule;

26. Sustain (foundation);

27. Sustain (foundation, legal conclusion, relevance);

28. Overrule;

29. Same as #1, above;

30. Sustain (foundation) and, in particular as to wholesale status (legal conclusion);

31. Overrule;

32. Overrule;

33. Sustain;

34. Overrule;

35. Overrule;

36. Sustain (relevance);

37. Sustain (relevance);

38. Overrule;

39. Overrule;

40. Sustain (relevance);

41. Sustain (relevance).

*Ortega Decl.*

1. Sustain to the extent declarant opines on wholesale status (improper opinion/legal conclusion); otherwise, overrule;

2. Overrule;

3. Sustain as to following language: "which in turn sold these products to their patients" (foundation); otherwise overrule;

4. Same as #1, above, and also sustain as to taking orders for the direct sale of products to an ultimate consumer (foundation); otherwise overrule;

5. Overrule;

6. Sustain;

7. Overrrule;

8. Overrule;

9. Overrule;

10. Overrule;

11. Overrule;

12. Sustain as to retail/wholesale distinction (foundation/legal conclusion/improper opinion); otherwise overrule;

13

13. Same as #1, above;

14. Overrule;

15. Same as #1, above;

16. Overrule;

17. Overrule;

18. Sustain (relevance);

19. Sustain as to customers' perception (foundation); otherwise overrule;

20. Sustain (relevance);

21. Overrule;

22. Overrule;

23. Overrule;

24. Overrule;

25. Sustain (hearsay);

26. Sustain (foundation);

27. Overrule;

28. Overrule;

29. Overrule;

30. Sustain (foundation);

31. Sustain (foundation, legal conclusion, relevance);

32. Overrule;

33. Overrule;

34. Same as #1, above;

35. Sustain (foundation) and, in particular as to wholesale status (legal conclusion);

36. Overrule;

37. Overrule;

38. Overrule;

39. Overrule;

*Porter Decl.*

1. Sustain to the extent declarant opines on wholesale status (improper opinion/legal conclusion); otherwise, overrule;

2. Same as #1, above;

3. Overrule;

4. Sustain as to following language: "which in turn sold these products to their patients" (foundation); otherwise overrule;

5. Sustain as to taking orders for the direct sale of products to an ultimate consumer (foundation); otherwise overrule;

6. Overrule;

7. Overrule;

8. Overrule;

9. Overrule;

10. Overrule;

11. Sustain as to retail/wholesale distinction (foundation/legal conclusion/improper opinion); otherwise overrule;

12. Same as #1, above;

13. Same as #1, above;

14. Same as #1, above, and also sustain as to what Keytel told other sales representatives (foundation);

15. Overrule;

16. Sustain (foundation, lay opinion);

17. Sustain (foundation, lay opinion);

18. Sustain as to customers' perception (foundation); otherwise overrule;

19. Sustain (relevance);

20. Overrule;

21. Overrule;

22. Overrule;

23. Overrule;

24. Sustain (hearsay);

25. Sustain (foundation);

26. Overrule;

27. Sustain (foundation, legal conclusion, relevance);

28. Overrule;

      29. Overrule;

      30. Sustain (foundation) and, in particular as to wholesale status (legal conclusion);

      31. Overrule;

      32. Sustain (relevance);

      33. Overrule;

      34. Sustain (best evidence);

      35. Overrule.